**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

JASON CRADDOCK,

Plaintiff,

v. CIVIL ACTION NO. 2:10-cv-01401

ADON NETWORK, INC.,

Defendant.

**MEMORANDUM OPINION & ORDER**

## I. Background

Pending before the court is the plaintiff Jason Craddock's Notice to Withdraw Motion to Remand [Docket 8], which the court construes as a motion to withdraw Plaintiff's Motion to Remand [Docket 5] this case to the Circuit Court of Kanawha County, West Virginia. Even where a motion to remand is not filed, a district court must remand a case if, at any time before final judgment, it appears that the court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). The Notice of Removal, Motion to Remand, and Response in Opposition to the Motion to Remand filed in this case provide the court with ample grounds to determine whether jurisdiction is appropriate, especially because the dispositive question on remand in this case is a purely legal, not a factual one. Because the court is always charged with determining whether jurisdiction is appropriate, to allow the plaintiff to withdraw and later refile his motion to remand would be a waste of resources and an abdication of the court's responsibility to determine whether it possesses jurisdiction before proceeding. Accordingly, the motion to withdraw the Motion to Remand [Docket 8] is hereby

**DENIED**. Further, for the reasons explained below, the court **FINDS** that it does not possess subject matter jurisdiction in this matter, and the Motion to Remand [Docket 5] is hereby **GRANTED**.

The defendant, AdOn Network, Inc. ("AdOn"), removed this action pursuant to 28 U.S.C. § 1441(b), asserting that this court possesses federal question jurisdiction under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. (Not. Removal [Docket 1], at 2.) The plaintiff's Complaint alleges, in relevant part, that the defendant violated his rights under the West Virginia Minimum Wage and Maximum Hours Standards for Employees Act, W. Va. Code § 21-5C-3 ("the Minimum Wage Act"), by failing to compensate the plaintiff for overtime work between June 2007 and January 2010. The plaintiff argues in his Motion to Remand that he has alleged *only* violations of West Virginia law, and, therefore, that federal question jurisdiction cannot lie. Under the defendant's analysis, federal question jurisdiction exists, because the plaintiff's claims under the Minimum Wage Act necessarily raise, as an element of the claim, the issue of whether more than eighty percent of the defendant's employees are covered by the Fair Labor Standards Act ("FLSA"). *See* W. Va. Code § 21-5C-1(e) ("[T]he term 'employer' shall not include any individual, partnership, association, corporation, person or group of persons or similar unit if eighty percent of the persons employed by him are subject to any federal act relating to minimum wage, maximum hours and overtime compensation.").

## II. Standard

Federal removal jurisdiction is governed by 28 U.S.C. § 1441(a), which provides:

> [A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the ... defendants ... to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Accordingly, "removal is appropriate if the face of the complaint raises a federal question." *Lontz v. Tharp*, 413 F.3d 435, 439 (4th Cir. 2005).

The removing party bears the burden of establishing subject matter jurisdiction. *Mulcahey v. Columbia Organic Chem. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). Federal courts must "construe removal jurisdiction strictly because of the 'significant federalism concerns' implicated" by it. *Maryland Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 260 (4th Cir. 2005) (quoting *Mulcahey*, 29 F.3d at 151). Accordingly, complaints asserting what appear to be only state law claims cannot ordinarily be removed from state court. *See, e.g., Harless v. CSX Hotels, Inc.*, 389 F.3d 444, 450 (4th Cir. 2004); *King v. Marriott Intern. Inc.*, 337 F.3d 421, 424 (4th Cir. 2003); *Darcangelo v. Verizon Communications, Inc.*, 292 F.3d 181, 186 (4th Cir.2002); *Cook v. Georgetown Steel Corp.*, 770 F.2d 1272, 1274 (4th Cir. 1985).

Generally, a court need not look beyond the complaint to determine whether the lawsuit raises federal issues sufficient for subject matter jurisdiction:

> In determining whether a plaintiff's claim arises under federal law, we apply the well-pleaded complaint rule, which holds that courts "ordinarily ... look no further than the plaintiff's [properly pleaded] complaint in determining whether a lawsuit raises issues of federal law capable of creating federal-question jurisdiction under 28 U.S.C. § 1331." *Custer v. Sweeney*, 89 F.3d 1156, 1165 (4th Cir.1996). Thus, in examining the complaint, our first step is to "discern whether federal or state law creates the cause of action." *Mulcahey*, 29 F.3d at 151; *see also Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir.2004) ("The vast majority of lawsuits 'arise under the law that creates the cause of action.' ") (quoting *Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916)). If federal law creates a plaintiff's claim, then removal is proper. *Mulcahey*, 29 F.3d at 151. The general rule, of course, is that a plaintiff is the "master of the claim," and he may "avoid federal jurisdiction by exclusive reliance on state law" in drafting his complaint. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

*Pinney v. Nokia, Inc.*, 402 F.3d 430, 442 (4th Cir. 2005) (parallel citations omitted).

In this case, just as in *Pinney*, state law is the only alleged basis for plaintiff's claims. However, "this does not end our inquiry." *Id.* There is a "small class of 'cases in which a well-pleaded complaint establishes. . .that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Pinney*, 402 F.3d at 442 (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808 (1988)); *see also Franchise Tax Bd. of California v. Construction Laborers Vacation Trust*, 463 U.S. 1, 13 (1983). This is known as the substantial federal question doctrine, which "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 312 (2005).

The United States Supreme Court in *Grable* laid down a single "framework of examining the importance of having a federal forum for the issue, and the consistency of such a forum with Congress's intended division of labor between state and federal courts." *Id.* at 319. Three elements must be met before a court may exercise jurisdiction in this narrow category of cases: "the question is, [1] does a state-law claim necessarily raise a stated federal issue, [2] actually disputed and substantial, [3] which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314. Mere allegations of a "federal issue" do not act as "as a password opening federal courts to any state action embracing a point of federal law." *Id.* In *Grable*, the Supreme Court was faced with the question of whether a substantial federal question was implicated by a quiet title action challenging the underlying validity

of a sale of property seized by the Internal Revenue Service ("IRS"). *Id.* at 311. The dispositive issue in the case was whether or not the IRS had correctly interpreted the applicable notice statute in the federal tax law. *Id.* The court found that the question of whether the petitioner was given notice within the meaning of the federal tax law was in dispute, and was "the only legal or factual issue contested in the case." *Id.* at 314. Not only was the notice question an "essential element of [the] quiet title claim," the meaning of the notice statute was "an important issue of federal law that sensibly belong[ed] in federal court." *Id.* Because the IRS's ability to collect taxes and satisfy claims was implicated by the question at issue, "the Government thus [had] a direct interest in the availability of a federal forum," and the Court found it would be "the rare state title case that raises a contested matter of federal law [. . .] portend[ing] only a microscopic effect on the federal-state division of labor." *Id.*

The *Grable* doctrine was reexamined by the Supreme Court just a year later in *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 704 (2006), where the Court emphasized that very few cases can be "squeezed into the slim category *Grable* exemplifies." 547 U.S. at 704. In *Empire Healthchoice*, the Court examined a suit brought by a health insurer for federal employees against the estate of a former enrollee, seeking reimbursement of insurance benefits on the grounds that the enrollee had recovered damages for his injuries in a state tort action. *Id.* at 682. There, the Supreme Court found that this type of case did not "fit within the special and small category" exemplified by *Grable*. *Id.* at 698. The Court found that "[t]he dispute [in *Grable*] centered on the action of a federal agency (IRS) and its compatibility with a federal statute, the question qualified as 'substantial,' and its resolution was both dispositive of the case and would be controlling in numerous other cases." *Id.* at 700 (*citing Grable*, 545 U.S., at 313) (parallel citations omitted).

"*Grable* presented a nearly pure 'issue of law,' one 'that could be settled once and for all and thereafter would govern numerous tax sale cases.'" *Id.* (*citing* Hart & Wechseler 65 (2005 Supp.)). "In contrast," the issue in *Empire* was "fact-bound and situation specific." *Id.* at 701. The Supreme Court found that although the *Empire* plaintiff's claim may have involved a federal issue, that alone was not enough to impose federal jurisdiction over an otherwise state law claim. The Court emphasized that a "state court in which [the original] suit was lodged is competent to apply federal law, to the extent it is relevant, and would seem best positioned to determine" the remaining issues in the suit. *Id.* "In sum, *Grable* emphasized that it takes more than a federal element 'to open the 'arising under' door.'" *Id.* (*citing Grable*, 545 U.S., at 313); *see also Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 569-74 (6th Cir. 2007) (en banc) (applying *Empire Healthchoice*/*Grable* and finding no "substantial" federal question was involved where resolution of the plaintiffs' state law claim required an interpretation of the federal Internal Revenue Code); *Morgan Cty. War Memorial Hosp. v. Baker*, 314 Fed. Appx. 529, 534- 36 (4th Cir. 2008) (unpublished) (applying *Empire Healthchoice*/*Grable* and finding that where the "dispute centers on the actions of private parties, resolution of any question of federal tax law is not 'dispositive' of a breach of fiduciary duty claim, and it is hard to see how resolution of any federal tax law issue in this case would be controlling in 'numerous' cases.")

As the Sixth Circuit Court of Appeals succinctly explained in a recent *en banc* opinion, the Supreme Court in *Empire Healthchoice* outlined the factors "that affect the 'substantiality' [i.e., the second *Grable* prong] of a federal interest in that case or issue: (1) whether the case includes a federal agency, and particularly, whether that agency's compliance with the federal statute is in dispute; (2) whether the federal question is important (i.e., not trivial); (3) whether a decision on the

federal issue will resolve the case (i.e., the federal question is not merely incidental to the outcome); and (4) whether a decision as to the federal question will control numerous other cases (i.e., the issue is not anomalous or isolated)." *Mikulski*, 501 F.3d at 570 (citing *Empire Healthchoice*, 547 U.S. at 700)). Having outlined the relevant outer limits of 28 U.S.C. § 1331 jurisdiction exemplified by the substantial federal question doctrine, I will now turn to the application of those limits to this case.

## III. Discussion

### a. Necessarily Raised Federal Issue

The first prong of the *Grable* analysis requires the court to consider whether the "state-law claim necessarily raise[s] a stated federal issue." 545 U.S. at 314. This is satisfied when "it appears that some ... disputed question of federal law is a necessary element of one of the well-pleaded state claims." *Franchise Tax Bd.*, 463 U.S. at 13. "[A] case may not be removed to federal court on the basis of a federal defense." *See id.*, 463 U.S. at 14. The defendant alleges that the plaintiff's state law claims under the Minimum Wage Act necessarily raise a federal issue. The defendant asserts that the plaintiff must prove, as an element of his claims under the Act, that the defendant is an 'employer' under the Act. In the defendant's view, because a proviso within the definition of employer makes reference to a federal issue–whether eighty-percent of the defendant's employees are covered by the FLSA–that issue is a 'necessary element' of the plaintiff's claim. The Supreme Court of Appeals of West Virginia has never addressed the question of whether or not the 'eighty-percenter' issue is a necessary element of a plaintiff's claims under the Act. This implicates a question of state law that is unsettled, and could ultimately only be answered by the Supreme Court of Appeals of West Virginia. One judge in this district has found that the inclusion of the FLSA eighty-percenter issue in the definition of employer under the Act means that proving the defendant

*is not* an FLSA eighty-percenter is an element of every plaintiff's claim. Under this view, the federal issue will be a necessary element of *any* plaintiff's claim under the Act. *See Harper v. Massey Coal Servs, Inc.*, 2011 WL 322558, at *1 (S.D. W. Va. Feb. 2, 2011) (Copenhaver, J.). If, however, the FLSA eighty-percenter issue is merely an exemption or an affirmative defense, for which the defendant would bear the burden of proof, then the federal issue would not be a necessary element of the plaintiff's claim, and therefore not satisfy the first prong of the *Grable* analysis.

Other courts in the Fourth Circuit have reached the latter conclusion when addressing whether other, similar state wage and hour laws necessarily raise this issue. *See Faye v. High's of Baltimore*, 541 F. Supp.2d 752, 755 (D. Md. 2008); *Chandler v. Cheesecake Factory Restaurants*, 239 F.R.D. 432, 437 (2006). However, certification of this issue to the Court or offering a prediction of their ultimate conclusion is unnecessary. Because, for the reasons outlined below, I find that the federal issue is not 'substantial' under federal law for purposes of removal jurisdiction, I will assume without deciding that defendant's status as an FLSA 'eighty-percenter' is a necessary element of a well-pleaded complaint under W. Va. Code § 21-5C-3.

**b. Actually Disputed and Substantial Federal Issue**

Accordingly, I turn to the second prong of the *Grable* analysis–whether there is an actually disputed and substantial federal issue. *See Grable*, 545 U.S. at 314. Under the Minimum Wage Act, an entity is only an 'employer' if fewer than eighty percent of its employees are covered by the FLSA. Here, the defendant asserts that more than eighty percent of its employees are covered, and therefore, that it should not be the subject of any claims under the Act. The plaintiff has not addressed this point, but it seems unlikely that the plaintiff would concede at this early stage that

the defendant was not covered by the Minimum Wage Act, as that would result in the dismissal of most of his claims. I will therefore assume that this question is actually disputed.

For the reasons outlined below, I conclude that the eighty-percenter issue is not a substantial one. The Supreme Court in *Empire Healthchoice* laid out the factors "that affect the 'substantiality' of a federal interest in that case or issue: (1) whether the case includes a federal agency, and particularly, whether that agency's compliance with the federal statute is in dispute; (2) whether the federal question is important (i.e., not trivial); (3) whether a decision on the federal issue will resolve the case (i.e., the federal question is not merely incidental to the outcome; and (4) whether a decision as to the federal question will control numerous other cases (i.e., the issue is not anomalous or isolated)." *Mikulski*, 501 F.3d at 570 (citing *Empire Healthchoice*, 547 U.S. at 700)).

Applying the *Empire Healthchoice* factors to this case makes clear that allowing *every* claim brought under W. Va. Code § 21-5C-3 to be removed to federal court would run counter to the Supreme Court's recognition that *Grable* represented a "slim category" of cases. *Empire Healthchoice*, 547 U.S. at 70. This case is "poles apart" from *Grable*, where the only legal or factual question at issue in the case was the question of whether a federal agency had correctly interpreted and applied a federal law. *Id.* at 700.

The first, third, and fourth factors clearly weigh against jurisdiction. First, there is no federal agency in this dispute. *See Empire Healthchoice*, 547 U.S. at 700. In *Grable*, the question of whether a federal agency–the IRS–had correctly applied a federal statute–the Internal Revenue Code–was the "*only* legal or factual issue contested in the case." *Grable*, 545 U.S. 308. The federal government had a "direct interest in the availability of a federal forum to vindicate" the action that was taken *in that case*, which was the underlying basis for the quiet title action. *Id.* In this case,

there is no federal agency involved, and no underlying question about the actions of a federal agency or interpretation of a federal law. This is a lawsuit between private parties, the resolution of which simply *may* turn on interpretation of a federal law.

As the Sixth Circuit noted in *Mikulski*, the third factor–whether or not an issue is 'dispositive'–is not always immediately apparent. *See id.* 501 F.2d at 571. At first glance, it might appear that resolution of this issue would be dispositive, but a closer examination reveals that it would not. Resolution of the 'eighty-percenter' issue in the defendant's favor would be 'dispositive.' Resolution of this issue *against* the defendant would not resolve the entire dispute *Cf. Grable*, 545 U.S. at 314 (where the question of whether the petitioner was given notice within the meaning of the federal tax law was in dispute, and was "the only legal or factual issue contested in the case."). Here, at most, the federal issue represents but one element of one of the plaintiff's claims, all of which are based in state law. Accordingly, resolution of the 'eighty-percenter' issue is not necessarily dispositive of this case, and weighs against jurisdiction.

The fourth factor, whether a decision on this issue will control numerous other cases[1], also weighs against jurisdiction. The question of the defendants' employees' coverage under the FLSA is "fact-bound and situation specific." *Empire Healthchoice*, 547 U.S. at 700. Resolution of whether the defendant's employees in this case are subject to the FLSA will not resolve even this one element of claims in other cases brought under the Minimum Wage Act. Instead, courts–whether state or federal–addressing claims under the Minimum Wage Act will be required to determine on a case-by-case basis whether or not eighty percent of an employers' employees are

[1] This factor requires the court to determine whether resolution of the alleged federal issue would control numerous other cases, not whether resolution of the question of federal subject-matter jurisdiction will govern numerous other cases.

covered by the FLSA. *Cf. id.* ("*Grable* presented a nearly 'pure issue of law,' one 'that could be settled once and for all and thereafter would govern numerous tax sale cases.'") (*citing* Hart & Wechsler 65 (2005 Supp.))

The second factor, whether the question is important or substantial, is less clear. To be sure, resolution of the 'eighty-percenter' issue involves the interpretation of an important federal statute, the FLSA. The specific question at issue, who is covered by the FLSA, is a complex and frequently-litigated one. *See Harper*, 2011 WL 322558, at *6. Nevertheless, although the federal government certainly has an interest in ensuring that there is uniformity in the application of federal statutes, the question does not necessarily implicate "broader or more substantial issues." *Mikulski*, 501 F.3d at 571. Nor will the resolution of the coverage issue in this case have any *res judicata* effect on the federal government. Accordingly, I find that this factor also weighs against jurisdiction in this case.

It is well-settled that courts should construe removal jurisdiction strictly because of the significant federalism concerns removal implicates. *Md. Stadium Auth. v. Ellerbe Becket, Inc.*, 407 F.3d 255, 260 (4th Cir. 2005). "If federal jurisdiction is doubtful, a remand is necessary." *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148 , 151 (4th Cir. 1994). As in *Empire Healthchoice*, the "state court in which the [. . .] suit was lodged is competent to apply federal law, to the extent it is relevant." *Id.*, 547 U.S. at 701. For the reasons outlined above, I **FIND** that even if this claim necessarily raises an actually-disputed federal issue, that issue is not substantial, and thus, that this court lacks federal subject-matter jurisdiction in this case.[2]

---

[2] I need not reach the question of whether jurisdiction would disturb the congressionally approved balance of federal and state judicial responsibilities. I note, however, that finding jurisdiction based on the existence of the eighty-percenter issue in the Minimum Wage Act would allow removal of *all* cases brought under that Act, even those (such as the Complaint in this case) (continued...)

## IV. Conclusion

For the reasons explained above, the motion to withdraw the Motion to Remand [Docket 8] is hereby **DENIED**. Further, the court **FINDS** that it lacks subject matter jurisdiction, and the Motion to Remand [Docket 5] is hereby **GRANTED**. The court **REMANDS** this action to the Circuit Court of Kanawha County, West Virginia and **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party and a certified copy of this Order to the Clerk of the Circuit Court of Kanawha County, West Virginia.

ENTER: April 27, 2011

Joseph R. Goodwin, Chief Judge

---

[2](...continued)
that rely solely upon state law as the basis for the cause of action.